UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

NeoDevices, Inc.,
    Plaintiff

    v.                            Civil No. 08-cv-375-SM
                                        Opinion No. 2009 DNH 020
NeoMed, Inc. and Anthony C. Lair,
    Defendants

# **O R D E R**

NeoDevices, Inc. ("NeoDevices") brought suit against NeoMed, Inc. ("NeoMed") and Anthony C. Lair ("Lair") for alleged trademark dilution, defamation, unfair and deceptive trade practices, tortious interference with prospective contractual relationships, and breach of contract.[1]  NeoDevices asserts that by using product numbers identical to the ones it used, NeoMed tricked NeoDevices' customers into purchasing NeoMed's products. NeoDevices further asserts that NeoMed made false statements regarding the quality of its products.  Defendants removed this suit from the New Hampshire Superior Court, and now move to dismiss for lack of personal jurisdiction.  Plaintiff objects. For the reasons given, defendants' motion to dismiss is granted.

---

[1] NeoDevices amended its complaint to include a breach of contract claim after NeoMed filed its motion to dismiss for lack of personal jurisdiction.

**The Legal Standard**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, when considering a motion to dismiss for lack of personal jurisdiction, the court takes the facts pled in the complaint as true, and construes them "in the light most congenial to the plaintiff's jurisdictional claim." Negrón–Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007). The court also considers uncontradicted facts put forth by the defendant, but does not "credit conclusory allegations or draw farfetched inferences." Id. (citations and quotation marks omitted).

**Background**

NeoDevices is a New Hampshire corporation, and its principal place of business is located in New Hampshire. NeoDevices manufactures neonatal medical devices. NeoMed is a Georgia corporation, with a principal place of business in Georgia. NeoMed is not registered to do business in New Hampshire, nor does it maintain offices or own assets here. NeoMed directly competes with NeoDevices in manufacturing and selling neonatal medical devices. Defendant Anthony Lair is a former shareholder of NeoDevices and currently owns and controls NeoMed and another business known as Specialty Medical. At one time, Specialty

Medical was a distributor of NeoDevices' products.[2]  Specialty
Medical now distributes NeoMed's products, but not NeoDevices'
products.

In or around December of 2006, Lair entered into a Stock
Redemption Agreement with NeoDevices.  As part of that Agreement,
Lair and NeoDevices agreed that they would not disparage each
other in the industry or marketplace.  The Stock Redemption
Agreement is governed by the laws of New Hampshire.  The
complaint contains no factual allegations concerning the
formation of the Stock Redemption Agreement.

Between October and November of 2007, Specialty Medical
ordered a variety of medical devices from NeoDevices.  Plaintiff
alleges that soon after that purchase, NeoMed began to sell
competing products, using product codes identical or
substantially similar to those used by NeoDevices.  According to
NeoDevices, product codes are unique to manufacturers in the
neonatal medical devices industry.  NeoDevices has been using its
product codes since the company's inception in 2004.  Typically,
customers who purchase medical devices enter a product code into
a hospital's computerized inventory and ordering system.  When

---

[2] Plaintiff has not joined Specialty Medical as a party to
this action.

supplies run low, the hospital's purchasing agent contacts the product's distributor and orders the device by product code and quantity.

NeoDevices alleges that since NeoMed began selling products using the same product codes, Specialty Medical and NeoMed have been filling orders with NeoMed's products rather than NeoDevices' products, while customers thought they were purchasing products manufactured by NeoDevices.

NeoDevices also alleges that Lair, acting individually or as an agent of NeoMed, has falsely informed distributors, NeoDevices' competitors, and its customers, that NeoDevices' products are not FDA approved, or lack the requisite 510(k) premarket approval from the FDA.  NeoDevices further alleges that Lair recently called NeoDevices' current distributor, CoMedical, and falsely reported to CoMedical that NeoDevices' feeding tube lacked the requisite 510(k) approval.  The complaint does not identify CoMedical's place of business.

Based on the foregoing allegations, NeoDevices asserts claims of trademark dilution under New Hampshire Revised Statutes Annotated ("RSA") 350-A:12 (Count I), defamation (Count II), breach of contract (Count III), unfair and deceptive trade

4

practices under RSA 358–A:2 (Count IV), and tortious interference
with prospective contractual relationships (Count V).


## Discussion

NeoMed moves to dismiss the complaint for lack of personal
jurisdiction.  NeoDevices counters that NeoMed's adoption of
NeoDevices' product codes, and making of false statements
regarding NeoDevices' FDA approval, caused NeoDevices to suffer
foreseeable injury in New Hampshire.  Thus, NeoDevices concludes
that this court should exercise personal jurisdiction over NeoMed
because, as explained in Northern Laminate Sales, Inc. v. Davis,
a party commits a tortious act within the state when injury
occurs in New Hampshire even if the injury is the result of acts
performed outside the state.  See 403 F.3d 14, 24 (1st Cir.
2005).


### A.  Statutory and Constitutional Prerequisites

When a defendant challenges personal jurisdiction, the
plaintiff bears the burden of demonstrating "the existence of
every fact required to satisfy both the forum's long–arm statute
and the Due Process Clause of the Constitution."  See
Negrón–Torres, 478 F.3d at 24 (quoting U.S. v. Swiss Am. Bank,
Ltd., 274 F.3d 610, 618 (1st Cir. 2001)).  Where, as here, the
state's long–arm statute is coextensive with the constitutional

5

limits of due process, the two inquiries become one, focusing solely on whether jurisdiction comports with due process.  See id.; Computac, Inc. v. Dixie News Co., 124 N.H. 350, 355 (1983) (explaining that New Hampshire's long-arm statute is "coextensive with constitutional limitations").

### B.  General v. Specific Jurisdiction

Personal jurisdiction comes in two varieties: specific and general.  See Negrón-Torres, 478 F.3d at 24.  Key to both is the existence of "minimum contacts" between the nonresident defendant and the forum.  Id.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state."  United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 & n.9 (1984)).  Plaintiff does not contend that defendants engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over them. Accordingly, if the court may properly exercise personal jurisdiction over the defendants, it must be specific jurisdiction.

A court may exercise specific jurisdiction "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  United Elec. Workers, 960 F.2d at 1088-89 (citation omitted).  In an effort to assist trial courts in determining whether they may properly exercise specific jurisdiction, the court of appeals for this circuit has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Id. at 1089.  An affirmative finding as to each of those three elements – relatedness, purposeful availment, and reasonableness – is necessary to support the court's exercise of personal jurisdiction over a defendant.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).


     1.  Relatedness

The relatedness inquiry is not an "open door" and requires a "material connection" between the defendant and the forum state.  Negrón-Torres, 478 F.3d at 25.  More specifically:

> This court steadfastly reject[s] the exercise of
> personal jurisdiction whenever the connection between
> the cause of action and the defendant's forum-state
> contacts seems attenuated and indirect . . . .  A broad
> 'but-for' argument is generally insufficient.  Because
> 'but-for' events can be very remote, . . . due process
> demands something like a 'proximate cause' nexus.

Id. (quoting Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st

Cir. 2005)).  A finding of relatedness requires that plaintiff's

action arises directly "out of the specific contacts between the

defendant and the forum state."  Sawtelle v. Farrell, 70 F.3d

1381, 1389 (1st Cir. 1995).  Put differently, for a finding of

relatedness to be warranted, the plaintiff's claim must arise out

of, or relate to the defendant's in-forum activities.  Id.

(citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206 (1st

Cir. 1994)).


    The relatedness requirement is tied to the particular claims

asserted.  Phillips Exeter Acad., 196 F.3d at 289 (citing United

Elec. Workers, 960 F.2d at 1089).


### a.  Counts II & V

    Count II is plaintiff's defamation claim, against both

NeoMed and Lair, and it is based upon allegations that defendants

falsely stated that NeoDevices lacked FDA approvals for some of

its products.  Count V is plaintiff's claim of tortious

interference with prospective contractual relationships, against

8

both NeoMed and Lair, and it is based, as well, upon allegations that defendants falsely stated that FDA approvals were not obtained, and that NeoMed deceptively used product codes identical to those used by NeoDevices.

Generally, to establish personal jurisdiction over a defendant in a tort claim, a plaintiff must show a "causal nexus between the defendant's contacts and the plaintiff's cause of action." Phillips Exeter Acad., 196 F.3d at 289 (citations omitted). Determination of relatedness begins with an identification of all the alleged contacts. Swiss Am. Bank, 274 F.3d at 621 (reasoning that there can be "no requisite nexus between the contacts and the cause of action if no contacts exist").

As noted above, plaintiff relies on Northern Laminate for the proposition that "a defendant need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." 403 F.3d at 25 (citing Calder v. Jones, 465 U.S. 783, 789 (1984)). In plaintiff's view, that statement in Northern Laminate supports a determination that defendants' extra-forum activities are sufficient to establish relatedness where harm results in the

forum.  There are two problems with plaintiff's reliance on Northern Laminate.

The court of appeals for this circuit has repeatedly held, when conducting relatedness inquiries, that "the in-forum effects of extra-forum activities [do not] suffice to constitute minimum contacts."  Swiss Am. Bank, 274 F.3d at 625 (quoting Mass. Sch. of Law v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998); citing Sawtelle, 70 F.3d at 1390-91; Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 11 (1st Cir. 1986)).  Swiss American Bank also explains that the Calder effects test applies to the purposeful availment inquiry, not the assessment of relatedness.  274 F.3d at 623.  While Northern Laminate briefly applies the Calder effects test to the relatedness inquiry, that passing reference does not signal abandonment of the standard described in Swiss American Bank.

Moreover, even if Northern Laminate did signal a shift away from Swiss American Bank, this case is factually distinguishable. Northern Laminate reviewed in great detail the contact that the defendant, Davis, had with his New Hampshire supplier.  The case involved an actual business relationship between an out of state company and a New Hampshire company.  Id.  Although Davis was never physically present in New Hampshire, he had considerable

10

contact with New Hampshire, contact that was overwhelming when compared to defendants' alleged contacts in this case.[3]

Plaintiff cannot rest on the pleadings to make a prima facie showing of jurisdiction, but is required to "adduce evidence of specific facts" that support its claim.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). With respect to Count II, plaintiff does no more than provide a conclusory allegation that NeoMed made false statements to customers and distributors regarding NeoDevices' FDA approval. And, with respect to Count V, plaintiff does no more than make cursory allegations that defendants' conduct interfered with prospective contractual relationships with customers and

---

[3] "On or about January 13, 2000, NLS and Matco entered into an agreement pursuant to which NLS furnished laminate components to ABC." 403 F.3d at 18.  "The components were shipped F.O.B. NLS' New Hampshire facility. . . ." Id.  "The payment terms of the agreement required that ABC too issue weekly checks to NLS in New Hampshire. . . ." Id.  On September 14, 2000, Davis initiated a meeting in his New York office with Russell, a New Hampshire resident.  Id. at 18-19.  "Russell drove from New Hampshire to New York to meet with Davis as arranged." Id. at 19.  "On September 22, 2000, . . . Davis sent a letter from New York to NLS in New Hampshire. . . ." Id.  Following Davis' letter, Russell sent an e-mail on October 31, 2000 responding to Davis' September 22 letter.  Id. at 20.  Davis responded to Russell's e-mail on November 1, 2000.  Id.  NLS then made several phone calls to Davis regarding failed payments and past due amounts "with no success." Id.  "On November 10, 2000, NLS sent an e-mail from New Hampshire to Davis in New York, stating '[y]ou've ignored numerous telephone calls. . . .'" Id. Subsequently, Davis returned Russell's e-mail claiming that he was not ignoring phone calls but rather, "'working diligently on solutions.'" Id.

distributors by using NeoDevices' product codes and spreading
false information about its products.  It does not allege where,
when, what, or to whom.


     Plaintiff says that since it suffered harm in New Hampshire
due to the false statements defendants made to distributors,
competitors and customers of NeoDevices, including CoMedical,
plaintiff has provided sufficient evidence for a finding of
relatedness.  However, plaintiff does not identify where these
distributors, competitors and customers are located.  Plaintiff
fails to indicate where defendants made such statements.  There
are no allegations, and is no evidence, that defendants contacted
New Hampshire residents to communicate false statements, or
confused New Hampshire purchasers with allegedly deceptive
product codes.  Mere allegations, without a showing of causal
nexus, is insufficient to support a finding of relatedness.  See
Negrón-Torres, 478 F.3d at 25 (finding conclusory allegations
insufficient to meet the requirements of the relatedness test).
Consequently, plaintiff has failed to satisfy the relatedness
prong with respect to Counts II and V.


          b.   Counts I & IV

     In Count I, NeoDevices alleges that NeoMed's adoption of
NeoDevices' product codes constitutes trademark dilution under

RSA 350–A:12.  In Count IV NeoDevices claims that NeoMed's use of deceptively similar product codes and its false statements about NeoDevices' products constitute unfair and deceptive trade practices under RSA ch. 358–A.  Again, plaintiff asserts that the injury it suffered in New Hampshire satisfies the relatedness prong.

Trademark infringement claims and unfair competition claims are analyzed as tort claims.  PFIP v. Planet Fitness Enters., Inc., No. Civ. 04–250–JD, 2004 WL 2538489, at *5 (D.N.H. Nov. 10, 2004) (citing Hard Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992)).

NeoDevices' allegations, that NeoMed's infringement outside the state caused injury felt in New Hampshire are conclusory. There is no allegation, or evidence, of NeoMed's allegedly using product codes deceptively similar to NeoDevices' in New Hampshire.  NeoDevices fails to identify any potentially misinformed hospitals or misinformed customers in New Hampshire.

So, to the extent Counts I and IV rest on NeoMed's alleged use of deceptively similar product codes, plaintiff has failed to establish relatedness, i.e., a causal nexus between defendants' contacts with New Hampshire and plaintiff's causes of action.

13

And, for reasons already given, the same holds true to the extent that plaintiff's claim is based on defendants' alleged false statements about FDA approvals.  Accordingly, NeoDevices has failed to satisfy the relatedness inquiry for Counts I and IV.

### c.   Count III

NeoDevices argues that the Stock Redemption Agreement between it and Lair is a contract between an out-of-state defendant and a New Hampshire plaintiff sufficient to establish personal jurisdiction over Lair.  That agreement includes the parties' mutual promise not to "disparage in the industry or marketplace each other, their respective companies or affiliates, or any of his, its or their respective shareholders, directors, officers, employees, or products."  (See Compl. ¶ 7).  Lair undertook a duty not to disparage.  The location of performance of that contractual obligation matters, because "a contract arguably is breached where a promisor fails to perform." Phillips Exeter Acad., 196 F.3d at 291 (citing Papachristou v. Turbines, Inc., 902 F.2d 685, 686 (8th Cir. 1990)).

In all types of cases, "the defendant's in-state conduct must form an important or at least material, element of proof in the plaintiff's case."  Id. at 289 (quoting United Elec. Workers, 960 F.2d at 1089) (brackets and internal quotations omitted).  In

contract cases, a court "must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Id.  "[T]he mere existence of a contractual relationship between an out-of-state-defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Id. at 290 (citing Burger King v. Rudzewicz, 471 U.S. 462, 478-79 (1985)).  "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of specific contacts between the defendant and the forum state." Id. (quoting Sawtelle, 70 F.3d at 1389).

In Phillips Exeter Academy, a private secondary school in New Hampshire sued the Florida-based Howard Phillips Fund in federal district court in New Hampshire. Phillips Exeter Acad., 196 F.3d at 286.  The plaintiff claimed, among other things, breach of contract. Id. The Academy alleged that the Fund failed to make certain payments it was due under the terms of Howard Phillips' will. Id. Howard Phillips established the Fund with a bequest of stock, and required that income from the stock be shared with the Academy. Id. Notwithstanding the fact that the Fund made annual payments to the Academy in New Hampshire,

id., and once sent a representative to New Hampshire to negotiate
with the Academy about terminating the Fund's obligations by
means of a lump-sum payment, id. at 287, the court of appeals
affirmed the trial court's decision to grant the defendants'
motion to dismiss for lack of personal jurisdiction.  After
explaining that "the relevant interactions between the parties
and the proposed forum must be assayed in light of the nature of
the plaintiff's claim," id. at 290, the court described the
"relevant interactions" as involving "the meaning of [Howard
Phillips'] will and the Fund's fulfillment of the obligations it
undertook coincident to its acceptance of the bequest."  Id.
Then the court continued:

> Most of the relevant interactions (e.g., the execution
> of the will, the acceptance of the bequest, and the
> payment decisions) occurred in Florida.  The rest
> (e.g., the restructuring of the Company and the
> conversion of the Fund's ownership interest to a
> membership interest) occurred in Delaware.  From this
> vantage point, Exeter's claim to jurisdiction in New
> Hampshire appears untenable.

Id. at 290-91 (citing Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764
F.2d 928, 934 (1st Cir. 1985)).  The court concluded its analysis
of the Academy's contract claim by holding that the Academy's
receipt of checks from the fund in New Hampshire was insufficient
to satisfy the relatedness test even though the effect of
insufficient payments would be felt in New Hampshire.  Id. at
291.

16

In _Sawtelle_, two New Hampshire residents sued two out-of-state attorneys and their law firms in the federal district court for legal malpractice resulting from negligent representation in Florida.[4]  70 F.3d at 1385.  The plaintiffs' son and his flight instructor were killed when their plane was struck by another aircraft.  _Id._  During the course of the parents' wrongful-death action in Florida, the defendant-attorneys recommended that they settle their claim for $155,000, which the plaintiffs did.  _Id._ at 1386.  However, the plaintiffs later found out that the flight instructor who also died in the crash had received a $500,000 settlement.  Subsequently, the plaintiffs sued their attorneys for legal malpractice.  _Id._ at 1387.  Neither of the defendant-attorneys ever "personally met the plaintiffs," _id._ at 1386, but one of them "sent at least fifteen letters to [the plaintiffs] in New Hampshire and spoke to them by telephone on numerous occasions," _id._, and the other one sent "numerous letters to [the plaintiffs] in New Hampshire and participated in several telephone conversations with them." _Id._ at 1386.

The court of appeals explained that to support personal jurisdiction over an out-of-state defendant, plaintiffs' cause of

---

[4]_Sawtelle_ is relevant to this discussion of personal jurisdiction in breach of contract actions because in New Hampshire, legal malpractice may be treated as a tort or a breach of contract.  See _Wong v. Ekberg_, 148 N.H. 369, 375-76 (2002).

action "must directly arise out of specific contacts between the
defendant and the forum state." Id. at 1389.  Notwithstanding
the many letters and phone calls the defendants directed to the
plaintiffs in New Hampshire, that the court described as
"unquestionably a contact," id., the court determined that it
would be "illogical" to characterize these events as "the
negligent conduct that caused the Florida injury."  Id. at 1390.
The court also stated:

> Ultimately . . . the gravaman of the [plaintiffs']
> claim is that they suffered in New Hampshire the
> "effects" of the defendants' negligence committed
> elsewhere.  The communications sent into New Hampshire
> were ancillary to the allegedly negligent non-forum
> activities, and because those communications were the
> only relevant contacts with the forum for purposes of
> the [plaintiffs'] malpractice claim, we conclude that
> the plaintiffs' showing of relatedness should be
> characterized as tenuous at best.  It hangs, as it
> were, by a thread.

Id. (internal citations omitted).  The court concluded that the
plaintiffs' showing of relatedness was weak because their claim
for legal malpractice did not directly arise out of, nor was it
related (in any meaningful way) to the law firms' contacts with
New Hampshire.


In United Electrical Workers, a Massachusetts labor union
brought an ERISA action against a number of defendants, including
International Twist Drill, Ltd. ("ITD"), a Scottish corporation.

18

United Elec. Workers, 960 F.2d at 1083.  One of ITD's principals,
John Lindsay was involved in negotiating the contract underlying
the plaintiffs' claim.  Id.  As the court of appeals explained,
"[o]f the forum-related contacts mentioned by the district court,
only Lindsay's involvement in negotiation of the collective
bargaining agreement can be thought to give rise, or relate, to
this cause of action."  Id. at 1089 (citing Hahn v. Vt. Law Sch.,
698 F.2d 48, 51 (1st Cir. 1983)).  The court continued:

> The location of the negotiations is vitally important
> to the jurisdictional inquiry in a case like this one.
> If the negotiations occurred outside the forum state,
> their existence cannot serve to bolster the argument
> for the assertion of jurisdiction in the forum.

Id.  (citing Pathe Computer Control Sys. Corp. v. Kinmont Indus.,
Inc., 955 F.2d 94, 96 (1st Cir. 1992)).  But, in United
Electrical Workers, there was "no indication in the record that
[the defendant's] involvement in the negotiations took place in
the forum state or by means of communications to and from the
forum."  Id.  The court concluded:

> For aught that appears, Lindsay might have played his
> part by telephone calls from Scotland to the Union's
> national offices in Pennsylvania, or by attending
> meetings held in a law firm's conference room in
> Delaware, New York City, or some other venue.  The
> record leaves these important facts entirely open to
> conjecture, speculation, and surmise.

19

Id.  Thus, the negotiations were considered "too thin a reed to support the district court's exercise of personal jurisdiction over [the defendant]."  Id.

Turning to the case at hand, with respect to the contract claim, plaintiff has failed to establish the minimum contacts necessary to support exercise of personal jurisdiction over Lair. Plaintiff's complaint alleges no conduct by Lair in New Hampshire, alleges no communication directed by Lair to New Hampshire entities, and does not identify the locations of the customers and distributors to which Lair allegedly made disparaging statements about plaintiff's products.

In response to defendants' motion to dismiss, plaintiff has added little useful information, producing no evidence of any relevant contract-related contacts.  Rather, plaintiff relies on the agreement's choice-of-law provision, which provides that the agreement is to be construed in accordance with and governed by New Hampshire law.  On the other hand, Lair testified, by affidavit, that he has been in New Hampshire once in his life, in 1988 to visit a college friend, at that he said nothing about NeoDevices' products to anyone in New Hampshire.

For Lair to be subject to personal jurisdiction on plaintiff's contract claim, his contacts with New Hampshire must have been "instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad., 196 F.3d at 289.  With regard to where the Stock Redemption Agreement was formed, plaintiff says nothing in its complaint or in response to defendants' motion to dismiss.  Thus, this case is controlled by United Electrical Workers, in which the absence of in-forum contract negotiations was fatal to the plaintiffs' claims.

With regard to the alleged breach of the non-disparagement provision of the Stock Redemption Agreement, there are two obstacles to the exercise of personal jurisdiction.  First, as explained above, the contract establishes a duty not to disparage.  However, even assuming that the agreement could be breached in New Hampshire by disparaging comments directed to entities in New Hampshire, plaintiff has alleged no such communications, and defendant has affirmatively denied that he made any statements – disparaging or otherwise – to entities in New Hampshire.  Thus, there is no support for the proposition that Lair breached his contract with plaintiff in New Hampshire. Second, there is also no support for the proposition that any activities conducted in New Hampshire, or any communications

directed into New Hampshire, were instrumental in the formation of the Stock Redemption Agreement.

Finally, as noted, plaintiff relies heavily on the choice-of-law clause in the Stock Redemption Agreement.  In <u>Burger King</u>, in the context of its purposeful availment analysis, the Supreme Court explained that a choice-of-law provision "should [not] be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes."  471 U.S. at 482.  The Court then went on to clarify that "such a provision <u>standing</u> <u>alone</u> would be insufficient to confer jurisdiction."  <u>Id.</u> (emphasis added).  In the absence of any demonstration that Lair had contacts with anyone in New Hampshire that were instrumental in either the formation or breach of the Stock Redemption Agreement, the choice-of-law provision in this case is indeed "standing alone" and, thus, provides insufficient grounds upon which to exercise personal jurisdiction over Lair.

Accordingly, plaintiff has not satisfied the relatedness inquiry with respect to Count III.

Where a plaintiff fails to satisfy the relatedness requirement, by failing to demonstrate sufficient contacts

between the out-of-state defendant and the forum state, personal jurisdiction is improper, and a purposeful availment analysis is unnecessary, if not impossible, given that the point of such an analysis is to evaluate the quality of a defendant's contacts with the forum state.  See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 138 (1st Cir. 2006) (ending personal jurisdiction analysis after determining that plaintiff failed to satisfy relatedness requirement); Ticketmaster, 26 F.3d at 207 (recognizing the possibility of situations in which "a court may . . . dismiss a given case for lack of relatedness per se"). Nevertheless, the court will turn briefly to the issue of purposeful availment.

### 2.  Purposeful Availment

Assuming, for this analysis, that NeoMed did have sufficient contacts with New Hampshire to establish relatedness, NeoDevices is still unable to demonstrate purposeful availment.

The second prong of the specific personal jurisdiction test requires the court to consider whether the defendant's contacts with the forum state "'represent a purposeful availment of the privilege of conducting activities in the forum state.'" Sawtelle, 70 F.3d at 1389 (quoting United Elec. Workers, 960 F.2d at 1089).  Specifically, the court looks to whether the defendant

"engaged in any purposeful activity related to the forum that
would make the exercise of jurisdiction fair, just, or
reasonable."  Id. at 1391.  "[T]he cornerstones upon which the
concept of purposeful availment rest are voluntariness and
foreseeability."  Id.  With these basic principles in mind, the
court turns to the parties' arguments on the issue of purposeful
availment.

Under established First Circuit precedent, this is the point
in the analysis when it is appropriate to apply the Calder
effects test.  See Swiss Am. Bank, 274 F.3d at 624 (explaining
that the Calder effects test is only relevant to the purposeful
availment prong).

The "effects" test focuses on the effects of the defendant's
conduct.  Calder, 465 U.S. at 788–89.  The plaintiff in Calder
brought a libel action in California state court against the
National Enquirer, a Florida corporation with its principal place
of business in Florida.  Two other defendants, Calder and South,
were Florida residents responsible for researching and writing
the allegedly libelous article.  South researched the article in
Florida through phone calls he made to California.  The Calder
court held that jurisdiction existed over the defendants in the
forum state where:

24

> (I) [the defendants'] intentional actions were aimed at
> the forum State, (ii) they knew that the article was
> likely to have a devastating impact on the plaintiff,
> and (iii) they knew that the brunt of the injury would
> be felt by the plaintiff in the forum State where she
> lived, worked and the article would have the largest
> circulation.

Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989) (emphasis added)

(citing Calder, 465 U.S. at 789-90).  The defendants' knowledge

that the major impact of their article would be felt in the forum

state was held to constitute a purposeful contact from which the

authors could reasonably expect to be haled into the forum

state's courts to defend their actions.  Calder, 465 U.S. at

789-90.


    In this case, there is no indication that any of defendants'

allegedly false statements or use of product codes were

intentionally aimed at New Hampshire.  That NeoDevices is located

in New Hampshire is entirely fortuitous in the context of the

conduct on which plaintiff bases its claims.  Unlike Calder,

where the Florida defendant made false statements in California

through his article's publication in California about the

California plaintiff to California third parties who were in a

position to hire or not hire the plaintiff in California, NeoMed

and Lair are not alleged to have made any statements in New

Hampshire and are not alleged to have made any statements to New

Hampshire third parties.  There is no evidence of purposeful
contact with New Hampshire because plaintiff makes no allegations
about the locations of those to whom defendant communicated
directly or contacted through its use of product codes.


    Plaintiff relies on Lex Computer and Management Corp. v.
Eslinger to argue that since NeoMed's statements harmed the
plaintiff's business, and that damage occurred in New Hampshire,
NeoMed should have reasonably anticipated being haled into court
in New Hampshire.  Lex Computer & Management Corp v. Eslinger,
676 F. Supp. 399, 402 (D.N.H. 1987).  But, the defendant in Lex
Computer purposefully availed himself of the privilege of
operating in the forum state when he sought out the plaintiff's
clients and potential clients in New Hampshire and sent them
defamatory letters about the plaintiff.  Id. at 404.  Further,
the plaintiffs in Lex Computer were able to show that the
defendants knew, or should have known, that their conduct would
injure a person in New Hampshire, by pointing to letters and
phone calls from the plaintiffs and their attorney to inform
defendants that their defamatory letters were adversely affecting
the plaintiffs' business.  Id. at 403-04.  Unlike the plaintiff
in Lex Computer, NeoDevices has not pointed to any evidence that
defendants contacted customers in New Hampshire.  Further, there
is no evidence that NeoMed specifically sought out NeoDevices'

26

customers or sent any letters to them.  In fact, it is unclear how frequently or infrequently NeoMed was even in contact with NeoDevices' customers.

Plaintiff also attempts to liken this case to <u>VELCRO Group Corp. v. Billarant</u>, 692 F. Supp. 1443 (D.N.H. 1988).  Again, <u>VELCRO</u> is distinguishable from the case at hand.  <u>VELCRO</u> dealt with two sets of defendants: (1) Aplix, Inc. and Aplix, S.A.; and (2) Billarant and Queval.  <u>Id.</u> at 1444–45.  Aplix fraudulently procured a patent with the specific intention of directing the patent against VELCRO, a New Hampshire citizen.  <u>Id.</u> at 1447. Aplix, Inc.'s fasteners, covered by its patent, are also incorporated in cars and trucks sold and used in New Hampshire. <u>Id.</u> at 1446.  Additionally, Billarant sent two notices of infringement letters to VELCRO at its New Hampshire headquarters. <u>Id.</u> at 1447.  The court found that the plaintiffs in <u>VELCRO</u> met their burden of showing that defendants knew, or should have known, that their conduct could injure a person in New Hampshire. <u>Id.</u> at 1448.  Unlike <u>VELCRO</u>, NeoDevices fails to put forth any assertion or evidence that would indicate that defendants had any communication with NeoDevices or any other New Hampshire citizens.  Nor has NeoDevices presented evidence that defendants sold products in New Hampshire.  Thus, plaintiff falls short of meeting its burden of showing that defendants knew, or should

27

have known, that their conduct could injure someone in New Hampshire, and, so, could reasonably expect to be haled into court here to defend their actions.

Plaintiff says it is sufficient that defendants used deceptively similar product codes to cause injury in New Hampshire.  However, plaintiff has failed to show that defendants have done anything more than place products into the stream of commerce.  Selling a product is insufficient to show purposeful availment:

> The placement of a product into the stream of commerce without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State . . . .  But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Hugel, 886 F.2d at 4 (quoting Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 112 (1987)).  Without any showing that defendants purposefully directed activities specifically to New Hampshire, plaintiff falls short of demonstrating purposeful availment.

With respect to the Stock Redemption Agreement, plaintiff argues that Lair purposefully availed himself of New Hampshire's

laws and protections due to the contract's choice of law
provision specifically designating New Hampshire law as governing
the contract.  A contract provision is not conclusive, but can
tip the scales to reinforce a nonresident defendant's deliberate
affiliation with the forum state.  Ganis Corp. of Cal. v.
Jackson, 822 F.2d 194, 198 (1st Cir. 1987).  Based on the
discussion above, however, Lair's executing the Stock Redemption
Agreement does not tip the scales enough to establish that Lair
deliberately affiliated with New Hampshire.  Unlike Northern
Laminate, this is not a case in which an out-of-state defendant
is alleged to have injured a New Hampshire plaintiff during the
course of an ongoing business relationship between the two.  The
terms of the agreement, as far as NeoDevices has described them,
were that Lair and NeoDevices would not disparage each other in
the course of their separate businesses.  However, plaintiff has
not pointed to any facts that would support a conclusion that
Lair was involved in an ongoing business relationship with
NeoDevices (and, again, the record is silent about whether any of
defendants' contacts with the forum were instrumental either in
the formation or breach of the contract).

     In sum, plaintiff has failed to meet the purposeful
availment prong with respect to all counts.  Because plaintiff
has met neither the relatedness inquiry nor the purposeful

availment inquiry, it is unnecessary to consider the Gestalt factors that make up the reasonableness inquiry.

## Conclusion

Because plaintiff fails to satisfy the relatedness and purposeful availment tests, the court lacks specific personal jurisdiction over NeoMed and Lair.  Accordingly, defendants' motion to dismiss (document no. 6) is granted.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 12, 2009

cc:  Michael J. Lambert, Esq.
     Rachel A. Hampe, Esq.
     Thomas J. Donovan, Esq.